UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

DONALD PARKELL v. ROBERT COUPE, et. al.

C.A. No. 14-601-LPS

Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment

This case proceeded on only the issue of Constitutionality of the 4 point restraints claim as it was applied to Parkell.

I am Parkell, and also pro se. My response is nearly as shackled as I was while in the hospital for 5 days.

I have been unfairly prejudiced in this case and have been thwarted from all relevant discovery requests.

Throughout this case, I have sought reasonable discovery in the form of documents necessary to ensure equal fairness in prosecuting this case. Those documents included the hospital records, the DOC policies, the log books from the hospital, admissions and interrogatories. The defendants claimed privilege and confidentiality regarding the requests I've made and only sent my medical file for just after I was released from the hospital. The medical file was voluminous, but irrelevant. They knew that the sheer size of the production would suggest to the Court that they were complying with

normal Fed. procedure, but it was subterfuge.

I requested, time and again, all hospital records including log books, all pages connected to my treatment at Christiana Hospital and pictures of my injuries. I asked for DOC policies relevant to my claims as well. All of these requests were reasonable and relevant to the case.

The defendants drafted a confidentiality agreement. I signed it. However, this did not mean anything because they continued to claim confidentiality and privilege as reasons why I its not able to receive the documents.

The Court seemed to accept their stance and did not compel the production of these documents. That in and of itself prevented me from defending my claims against any Summary Judgement motions. However, the Court did not appoint counsel sua sponte.

This was not the most damaging point I am making however. In a remarkable display of audacity, the defendants provided these same policies and log book documents to argue their motion for summary judgment. They claimed privilege + confidentiality to avoid cooperating in discovery, but don't seem concerned about any perceived

security excuses now, as they have not only cited the multiple exhibits, but they attached the same policies, log books and documents to their motion.

This is extremely prejudicial and an abuse of the Court's deference. They must assume that this Court will turn a blind eye to this blatant violation of the Fed. R. of Civ. P., but I doubt deference to prison administrators reaches that level, to allow certain claims when convenient, only to not use those same claims when not.

Although this abuse by defendants is likely to tie up Court time, resources and cause unnecessary delay, I now have a crystal clear example memorialized in the defendants' own motion as to the unfair discovery practice they follow.

In the event that the Court finds the summary judgment motion worth ruling on, there are still issues that remain in dispute that require a trial. The policy defendants cite (100.08) shows in its caption that this policy was approved, maintained and implemented at HRYCI by the warden himself. The policy places a factual dispute as to the affidavit by Lt. Vanes. Vanes stated in his declaration that the Deputy Warden ordered the 4 point restraints for me at the hospital. The policy states that inmate must

be at 4 points. Nothing in the policy states the Deputy Warden's involvement. In fact it states the Warden's approvals.

The logbook also shows a discrepancy in the 4 points treatment. Early in the stay, a nurse gave a 3 point memo for the stay due to my injuries. Lt. Vanes' affidavit is not credible, as he is testifying that the 4 point order came from the Deputy Warden. However, that order was allegedly given to an officer E. Lewis, from a St. Lt. Polk who stated to Lewis that the order came from the Deputy Warden. Vanes cannot testify to the origination of this order and it must be disregarded as hearsay. Also, even assuming that Emig (Dep. Warden) did give the 4 point order, he was not able to deviate from the Warden's policy.

The origination of the order & of the policy is shown in the defendants' other exhibits of policies not provided in discovery. Note that the 4 point policy order is a Warden's policy, whereas the clinical therapuetic restraint policy is the Commissioner's policy (1-01.1), and the policy for restraint of pregnant offenders (1-01.2) is a bureau chief policy.

The defendants' exhibit 2, the affidavit of Lt. Brian Vanes is also not admissible due to it being unsigned or stamped by a notary public or other Court authority.

The defendants argue that I was allowed to use the bathroom unshackled + out of the 4 points restraints, and point to an entry in the log book on 10/16 at ~~----~~ 1:15 as the proof. However, that entry does not state that I was allowed to go to the actual bathroom. The manner in which I was required to urinate was to angle my body up in order to urinate into a bottle, not as the defendants' motion suggests. This is a squarely disputed fact. As the log book is very specific when cuffs were undone, or put back on, the notation does not state that, exhibiting that I merely sat up somewhat.

The defendants' motion also points to notations in the log book that they argue shows that they let me out of the 4 point restraints on a number of occasions. However, this actually points to the lack of such relief, as the notations go on to explain that I was simply forced to further 4 point restraints in a chair.

And lastly, the motion suggests that the handcuffs were extended by use of flex cuffs in addition to the handcuffs. Again they are not representing the correct description of the restraints. The cuffs were in addition to the flex-cuffs. My wrists were cuffed with both and they were not extended for mobility.

Law is clearly established on the issue of restraints. Prison officials may use restraints for security purposes but the courts have curbed some extreme or abusive restraint practices. Four-point restraints is atypical and significant. See Sadler v. Young, 325 F. Supp. 2d 689, 705-06 (W.D. Va. 2004).

The due process question is at stake. A reasonable relationship standard as laid out in Bell v. Wolfish (see Robles v. Prince George's County, Md, 302 F.3d 262, 269 (4th Cir. 2002).

In fact indiscriminate and excessive restraint practices have been struck down. May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000) (the Court held that a practice of shackling all hospitalized prisoners to their beds, DESPITE THE PRESENCE OF AN ARMED GUARD, was "plainly excessive in the absence of any indication that the inmate posed some sort of security risk." Williams v. Benjamin, 77 F.3d 756, 765-68 (4th Cir. 1996) (leaving prisoner in 4-points restraints for 8 hours could violate the 8th Amendment).

Restraints under harsh conditions are considered punitive. See Littlewind v. Rayl, 839 F. Supp. 1369, 1373-75 (D.N.D. 1993). I had a half inch wide tube inserted through my chest into my lung. The doctors at the hospital specified that my arm should not be cuffed on the side the collapsed lung was on and the log-book entries

in defendants' motion shows multiple times it was told to officers. The order was according to policy, leaving no discretion to any officer or even to this "Deputy Warden" that has only now been identified.

A 5 day 4-point restraint is plainly excessive and unnecessary given the circumstances. The defendants argued that because I was "in a fight" that I required nearly a week in 4 point restraint despite doctor's orders contrary to this, as well as the fact that it was not a fight. Rather, other inmates jumped me. I was found to not have been in a fight at the disciplinary hearing. Besides that, there was security footage of the inmates who attacked me, and how extreme the injuries to me were. I was in the hospital with a collapsed lung & multiple broken ribs, which casts doubt as to what reason could be used to necessitate a 4-point restraint continued for 5 days.

4 point restraints is normally a condition that is called for when an inmate has exhibited behavior that is continuing to be a concern and the 4 points become necessary to protect either himself or others due to that behavior. At no time was there any reason to believe that of me. Considering the alternative, to simply hold me in leg shackles to the bed,

along with the 3 officers present (and one with a pistol) would be reasonable, with allowances or policies that provided me opportunity to use the restroom with a measure of dignity. At the very least, a 3-point limitation was necessary, due to the repeated requests and memos from hospital staff.

Many times this 4 point practice has been ruled violative. See Williams v. Benjamin, 77 F.3d 756, 765-68 (4th Cir. 1996), 8 hours, absent evidence that he had done anything threatening since being placed in them; French v. Owens, 777 F.2d 1250, 1253-54 (7th Cir. 1985) 12 hours in hard shackles violated 8th Amendment; Galluccio v. Holmes, 724 F.2d 301, 304 (2d Cir. 1983), two days chained to bed after refusing anal search presented a jury issue; Putman v. Gerloff, 639 F.2d 415, 419-20 (8th Cir. 1981) jury could find overnight chaining + handcuffing unconstitutional; Sadler v. Young, 325 F. Supp. 2d 689, 702-04 (W.D. Va. 2004) holding restraint for over 47 hours could be found unconstitutional where prisoner was calm after 3 hours; COURT FINDS A POLICY OF PUNITIVE 48-HOUR RESTRAINTS; Picariello v. Fenton, 491 F. Supp. 1020, 1024 (M.D. Pa. 1980) 3 to 5 days; Tate v. Kassulke, 409 F. Supp. 651, 654 (W.D. Ky. 1976) protracted chaining to bed violates 8th Amendment.

The Supreme Court has stated: "Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action" and it survives criminal conviction and incarceration. Youngberg v. Romeo, 457 U.S. 307, 316, 102 S.Ct. 2452 (1982)

That principle applies to prison restraint practices, though it is "highly qualified" in prison and must be balanced against the justification for the practices.

For these reasons, the Court should deny the defendants' motion and appoint a mediator to explore a mutually agreeable conclusion to this case, including the eventual appeal of the previous claims earlier dismissed.

In the alternative, counsel should be appointed due to the claims of confidentiality and privileges asserted in discovery. No cases in any court in American history have ever allowed evidence to only be permitted by one side; access to same denied to the other.

Attached is my own declaration in support of material facts in dispute. The Court should take notice that the complaint is also sworn to.

Respectfully
Donald Parker

600 State Rte 11
Hunlock Creek, PA
18621-3136
July 18, 2018