IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD D. PARKELL,  :
                      Plaintiff,  :
                      v.  :   Civ. No. 14-601-LPS
ROBERT COUPE, et al.,  :
                      Defendants.  :

Donald D. Parkell, SCI Retreat, Hunlock Creek, Pennsylvania, Pro Se Plaintiff.

Joseph Clemente Handlon, Deputy Attorney General, and Ophelia Michelle Waters, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

September 10, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("Plaintiff"), an inmate currently in the custody of the Pennsylvania Department of Corrections at SCI Retreat, in Hunlock Creek, Pennsylvania, proceeds *pro se*, and has been granted *in forma pauperis* status. Plaintiff was housed at James T. Vaughn Correctional Center in Smyrna, Delaware, when he commenced this civil rights action pursuant to 42 U.S.C. § 1983, claiming violations of his constitutional rights. (D.I. 3) The Amended Complaint is the operative pleading. (D.I. 19) Presently before the Court is the motion for summary judgment of Defendants Robert Coupe ("Coupe") and Phillip Morgan ("Morgan") (together "Defendants") and Plaintiff's opposition thereto. (D.I. 70, 72, 74, 75, 76)

## II. BACKGROUND

**The Amended Complaint.** The Court's March 19, 2018 Memorandum Opinion contains the history of this case. (*See* D.I. 68) The only claim that remains is the use of four-point restraints during Plaintiff's October 2013 hospitalization. (*See* id. at 12) Plaintiff alleges that he was subjected to a practice or policy that denied him adequate medical care in violation of the Eighth Amendment when Defendants enacted or maintained a policy or practice that caused him to be held in handcuffs and shackles in four-point restraints during his hospitalization. (D.I. 19 at ¶ VII. B. 95) The Amended Complaint alleges that following an October 2013 assault when Plaintiff was housed at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, he was taken to Christiana Hospital for treatment. (*Id.* at ¶¶ 64-65, 68) During the week he was hospitalized, Plaintiff was held in four-point restraints. (*Id.* at ¶ 72) The verified Amended Complaint alleges that Plaintiff was chained at both ankles and wrists, forbidden to move at all, and required to urinate in this manner with one wrist uncuffed only long enough to evacuate his bladder. (*Id.*) Plaintiff alleges that "this policy/practice resulted in pain, humiliation, and torture as a chest-tube was draining fluid from [his] lungs, a cruel and unusual punishment." (*Id.*)

1

**Evidence of Record.** After his assault, Plaintiff was treated at the HRYCI infirmary for a laceration to his scalp, rib pain, and for his eyes to be flushed with eyewash. (D.I. 64 at Ex. B) He was transferred to Christiana Hospital for treatment of his injuries.[1] (D.I. 34 at 350, 364; D.I. 64 at Ex. B) Plaintiff was held in four-point restraints during his hospitalization. (D.I. 55 at 2) Plaintiff submitted a grievance complaining that while hospitalized for four days, with severe trauma to his ribs and lungs, multiple broken ribs, and a chest tube, he was held in four-point restraints, which were "painful." (D.I. 56-1 at 223-31) An investigation determined that Plaintiff's hospitalization and treatment were "on par with Department Policies and Procedures" and that Plaintiff was not mistreated by hospital or security staff. (*Id.* at 224, 229) Defendants admit that Plaintiff was held in four-point restraints for the entire time he was housed at the Christiana Hospital, with only one cuff released to allow him to evacuate his body waste in full view of correctional officers, both male and female. (D.I. 55 at 2)

HYRCI Standard Operating Procedure ("SOP") 100.08, with an effective date of January 1, 2001 and revised April 15, 2013, governs the supervision of offenders at hospitals and other health care facilities by correctional officers. (D.I. 70 at 18, 22-25) SOP 100.08 provides that offenders must be restrained in four points minimum unless a written doctor's order specifies three points. (*Id.*) Hospitals are unsecure facilities and present challenging security issues to supervising officers. (*Id.* at 20) SOP 100.08 is designed to provide safe, secure, and courteous correctional supervision of offenders while hospitalized. (*Id.* at 22) The policy provides guidelines for correctional officers in order to prevent an inmate's escape while hospitalized. (*Id.* at 23)

Written orders for three-point restraints must be reviewed by the HRYCI shift commander, who can override a doctor's order for security concerns. (*Id.* at 18, 23) According to Lt. Brian Vanes ("Vanes"), a correctional officer at HRYCI, restraining an offender at a hospital in four-point

---

[1] The record does not contain Plaintiff's medical records from Christiana Hospital.

2

restraints does not mean that the offender is restrained in an uncomfortable position or for the purpose of causing discomfort. (*Id.*) Typically hands are restrained by cuffs connected to the sides of the hospital bed, which permit some movement of the offender's arms. (*Id.* at 18-19) Hands are not bound above the inmate's head. (*Id.* at 19) Officers typically use two sets of handcuffs for each arm to provide even greater movement or flexibility. (*Id.*) This is done with two regular handcuffs or one regular set with a set of flexcuffs. (*Id.*) Legs are restrained with leg shackles at the bottom of the bed, not at the corners. Offenders are not restrained in a "spread eagle" position. (*Id.*)

SOP 100.08 requires correctional officers to log information relative to an offender's hospital stay, including all movement in and out of the room, use of cuffs and restraints, and any "special" information and/or instructions received. (*Id.* at 22) The logbook for Plaintiff's hospitalization indicates that he was admitted to Christiana Hospital on October 13, 2013 and moved to a different room later that night. It appears that initially Plaintiff was placed in three-point restraints. (*Id.* at 28) The next day, there was a discussion regarding the use of three-point versus four-point restraints. (*Id.* at 29) HRYCI Deputy Warden Emig ("Emig") ordered Plaintiff's placement in four-point restraints at all times. (*Id.* at 29) The logbook indicates that Plaintiff was moved from his bed to a chair on October 14, 15, and 16, 2013. (*Id.* at 30-32) It further indicates that on October 16, 2013, Plaintiff was "up to urinate." (*Id.* at 32) The logbook also states that correctional officers used flexcuffs with regular handcuffs which, according to Vanes, provided maximum comfort and movement while still maintaining necessary security. (*Id.* at 19)

Plaintiff states in his declaration that during the five days he was hospitalized he had a chest tube. (D.I. 75 at 1) He was under constant four-point restraints; having his arms cuffed was painful due to the chest tube. (*Id.*) Of the three officers assigned to Plaintiff, one was armed with a handgun. (*Id.* at 2) Plaintiff states that he was not aggressive, disruptive, or agitated, and he was pleasant to all present. (*Id.* at 1) Plaintiff complained to correctional officers and nurses but was

3

told the decision was "straight from the warden himself. (*Id.*) Plaintiff states that nurses "repeatedly told officers that at least [his] right arm should not be cuffed due to [his] injuries and the officers told them that it was the warden's policy [and] they must follow it." (*Id.* at 2)

Whenever Plaintiff sat in a chair it was under "further" four-point restraints and it was "in no way a relief from a slightly different form of the same restraint." (*Id.* at 1) Every time Plaintiff needed to evacuate his bladder or bowels it was in full view of the three officers, and he was never permitted to access the bathroom. (*Id.*) Plaintiff states that he defecated in his bed and a nurse had to clean him, which was very embarrassing. (*Id.*)

Defendants move for summary judgment on the grounds that: (1) Plaintiff fails to allege plausible personal involvement by either Defendant; and (2) Defendants are shielded from liability by reason of qualified immunity. (D.I. 70) Plaintiff contends that summary judgment is not appropriate because: (1) he has been "thwarted from all relevant discovery requests"; (2) there are issues of fact regarding: (a) the personal involvement of Warden Morgan; (b) the use of three-point restraints versus four-point restraints; (c) the manner in which he was required to urinate; (d) the manner in which he was restrained while sitting in a chair; and (e)the manner Plaintiff was restrained with the use of handcuffs and flexcuffs; and (3) Vanes' declaration is inadmissible.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

4

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is

insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Discovery Issues

Plaintiff contends that the Court should not rule on Defendants' motion because he has been "thwarted from all relevant discovery requests." (D.I. 74) Plaintiff argues that he did not receive his hospital medical records and other requested discovery even though he signed a confidentiality agreement. Plaintiff takes particular exception to the fact that the requested policies and logbook documents were not provided to him in discovery, yet Defendants used those documents in their motion for summary judgment. Plaintiff argues he has been extremely prejudiced through the discovery process.

Defendants reply that Plaintiff did not respond to their April 17, 2018 motion until recently and only after the Court ordered Plaintiff to respond. They further note that after the Court granted Defendants' summary judgment on March 19, 2018 as to all claims except the restraint claim and ordered further briefing on that claim, Plaintiff took no discovery and made no complaints that additional discovery was necessary to prosecute the restraint claim.

On February 11, 2016, Plaintiff had sought any and all policies, directives, or instructions to staff concerning four-point restraint usage at an outside hospital. (D.I. 23, Request No. 2.AA) Plaintiff filed a second request for production of documents on April 18, 2016. (D.I. 28) That request made no reference to the use of restraints in a hospital setting. In response to discovery requests, Defendants objected to the extent Plaintiff sought confidential and privileged documents, but provided Plaintiff with 867 pages of discovery, plus a copy of the Department of Correction ("DOC") medication management policy. (*See* D.I. 32 at 5; 45 at 2) Plaintiff moved to compel discovery responses.

6

Plaintiff's motion to compel and amended motion to compel were ruled on by the Court in March 2017. (D.I. 45, 46) The Court found that Plaintiff's motion did not inform the Court which discovery requests were the subject of the motion. As a result, the Court could not discern why the responses were inadequate. In the same order, the Court granted Plaintiff's amended motion to compel responses to an April 18, 2016 request for production of documents and a February 2016 combined request for admissions and interrogatories. Request No. 1 concerned the issue of four-point restraints and Defendants responded to it as ordered by the Court. (*See* D.I. 22, Request No. 1; D.I. 55, Response to Request No. 1) Finally, the Court granted Plaintiff's request for a 90-day extension of time to complete discovery. (D.I. 45 at 7) Plaintiff's subsequent discovery requests did not address the restraint issue.

Defendants provided Plaintiff his DOC medical records. Plaintiff complains that he does not have his hospital records. The hospital is not a party to this action and there is nothing on the record that indicates Plaintiff sought a subpoena to obtain his hospital records. It is Plaintiff's responsibility to seek discovery he requires from non-parties.

In support of their motion for summary judgment, Defendants submitted the HYRCI restraint policy and the logbook correctional officers kept while Plaintiff was hospitalized. Plaintiff had sought in discovery all policies, directives, or instructions to staff concerning the use of four-paint restraints in an outside hospital setting, and Defendants objected to the request. However, when Plaintiff sought to compel responses, he failed to advise the Court that he was not provided with the policy. Nor, at any time, did he renew a motion to compel following the Court's order that advised him the motion was denied because the Court was unable to determine what discovery had not been provided. The Court cannot assist in discovery disputes unless it is given the necessary information for resolution. In addition, it does not appear that Plaintiff sought the hospital

7

logbooks that Defendants filed with their dispositive motion. Plaintiff raised the restraint issue and it was his responsibility to seek discovery on the issue.

The Court finds no unfair prejudice to Plaintiff in his pursuit of discovery. Nor does it find there were blatant violations of the Federal Rules of Civil Procedure, although Defendants should not have relied upon the objections to disclosure of the policy if their intent was to use it to support a dispositive motion. The restraint policy issue would have been addressed had it been brought to the Court's attention. Also, Plaintiff was able to review the documents and rely upon them in his opposition to Defendant's motion for summary judgment. (*See* D.I. 74)

Finally, while not a discovery issue, Plaintiff argues that Vanes' affidavit is not admissible because is it not signed or stamped by a notary public or other court authority. Vanes' declaration is made under penalty of perjury and contains a "/s/" signature block. (*Id.*) Thus, the declaration conforms with this Court's CM/ECF Administrative Procedure (H)(3) and will be considered.

### B. Due Process

In Plaintiff's opposition, he appears to argue that both his due process and Eighth Amendment rights were violated through the use of four-point restraints. (D.I. 74 at 6) The Amended Complaint alleges: "Plaintiff was subjected to a practice or policy that denied him adequate medical care in violation of the Eighth Amendment" when "both defendants enacted or maintained a policy or practice that caused the plaintiff to be held in handcuffs and shackles in a four-point restraint while he was at Christiana Hospital for an entire week uninterrupted." (D.I. 19 at 20-21)

Plaintiff did not raise a due process issue in his Amended Complaint. He may not amend his complaint through arguments in his brief in opposition to Defendants' motion for summary judgment. *See e.g., McLaud v. Industrial Resources,* Inc. 715 F. App'x 115 n.5 (3d Cir. Oct. 26, 2017)

(citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). To the extent Plaintiff attempts to raise a due process claim, it is not being considered by the Court.

### C. Personal Involvement

Defendants move for summary judgment on the grounds that they had no personal involvement in the conditions of Plaintiff's five-day hospitalization and the need to restrain him. Plaintiff contends that SOP 100.08 was implemented at HRYCI by the Warden (i.e., Morgan) and the use of restraints as set forth in the policy requires the Warden's approval. Plaintiff does not address the personal involvement of Coupe.

Liability in a 42 U.S.C. § 1983 action is personal in nature and, to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, ___U.S.___, 135 S.Ct. 2042 (2015). Thus, respondeat superior cannot form the basis of liability. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. Aug. 28, 2008) (instructing that constitutional deprivation cannot be premised merely on fact that defendant was prison supervisor when incidents set forth in complaint occurred). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"There are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (internal quotation marks omitted).

SOP 100.08 became effective January 1, 2001, and it was revised April 25, 2013, when Morgan was the warden at HRYCI. In addition, Plaintiff's declaration states that he was repeatedly told that the decision to place him in four-point restraints was "straight from the warden himself." (D.I. 75) Plaintiff also states that nurses repeatedly told officers that at least his right arm should not be cuffed due to his injuries. (*Id.*) While these statements are hearsay, the "United States Supreme Court [has] rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (citing *Celotex Corp.*, 477 U.S. at 324). "[H]earsay evidence . . . may be considered if the out-of-court declarant could later present the evidence through direct testimony (i.e., in a form that would be admissible at trial)." *Id.* There is no indication that Warden Morgan, a party in this case, would not be able to testify at trial or that Plaintiff's nurses are not available to provide testimony. Thus, the Court may consider Plaintiff's statements.

Defendants argue that it was Deputy Warden Emig who gave the order to place Plaintiff in four-point restraints, as indicated in the logbook. Conversely, Plaintiff contends that the order to keep him in four-point restraints came "straight from the warden." There are genuine issues of fact regarding Morgan's personal involvement in placing Plaintiff in four-point restraints. Therefore, as to Morgan, Defendants' motion for summary judgment on the issue of his personal involvement will be denied.

With regard to Coupe, no reasonable jury could find for Plaintiff based on the evidence of record. There is no evidence that Coupe directed Plaintiff's placement in restraints. Nor is there any evidence of record that Coupe established or maintained the policy at issue. While Plaintiff alleges that both Defendants enacted or maintained a policy or practice that caused him to be held in four-point restraints, the evidence of record does not support the claim against Coupe. Accordingly, Coupe will be granted summary judgment for his lack of personal involvement.

D.  **Eighth Amendment (Medical Needs, Conditions of Confinement, Excessive Force) and Qualified Immunity**

Plaintiff alleges his Eighth Amendment rights were violated when he was placed in four-point restraints during his hospitalization. Plaintiff frames the claim as a denial of adequate medical care. Given Plaintiff's *pro se* status, the Court will analyze the claim as a medical needs claim, as well as a conditions of confinement claim and excessive force claim, all of which fall under the Eighth Amendment. Defendants contend they are shielded from liability by reason of qualified immunity.

**Qualified Immunity.** Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (internal quotation marks omitted). Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as: (1) the official's conduct does not violate "a statutory or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). To determine if a right is clearly established, the Third Circuit directs the Court to first look for Supreme Court precedent. *See Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814

11

F.3d 164, 169 (3d Cir. 2016). If there is none, then the Court may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, 135 S. Ct. at 2044). "[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court exercises its discretion to decide which of the two prongs of the qualified immunity analysis to address first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Mirabella v. Villard*, 853 F.3d 641, 648-49 (3d Cir. 2017). The two-step test as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is often appropriate when analyzing qualified immunity. *See Pearson*, 555 U.S. at 236. Under the *Saucier* test, the Court first examines whether or not the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *See* 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the Court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Saucier*, 533 U.S. at 202 (noting that officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

**Adequate Medical Care.** Denial of medical care violates the Eighth Amendment where a prison official is deliberately indifferent to a prisoner's serious medical need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can occur where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "prevents a prisoner from receiving needed or recommended medical treatment." *Id.* Neither "mere allegations of malpractice" nor a prisoner's disagreement with prison medical professionals as to the proper

method of treatment rises to the level of an Eighth Amendment violation. *See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).

The evidence of record does not support a finding that Defendants were deliberately indifferent to Plaintiff's serious medical needs. The logbook correctional officers kept while Plaintiff was hospitalized details the medical personnel attending Plaintiff while he was hospitalized. The logbook indicates that Plaintiff was first placed in three-point restraints followed by placement in four-point restraints. There is no evidence that while he was under four-point restraints, Plaintiff did not receive adequate medical care or that his medical care differed under either type of restraint. While hospitalized and under four-point restraint, Plaintiff's vital signs were monitored, he was administered medication, he was fed, he was moved from the bed to a chair, and on at least one occasion he was "up to urinate." In his declaration, Plaintiff does not claim that he was deprived of medical care or treatment during the time he was in restraints.

The evidence of record does not support a finding that Plaintiff's Eighth Amendment rights were violated under the theory that he was denied adequate medical care while restrained. Because there was no constitutional violation under this theory, Defendants have qualified immunity and are shielded from liability.

**Conditions of Confinement.** The Eighth Amendment prohibits the infliction of cruel and unusual punishment and has been interpreted by the Supreme Court to impose affirmative duties on prison officials to "provide humane conditions of confinement." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Claims concerning conditions of confinement require a plaintiff to show that the conditions "pos[ed] a substantial risk of serious harm" and that the prison officials were deliberately indifferent to that risk. *Farmer*, 511 U.S. at 834. Deliberate indifference is a subjective standard in that the prison official must actually have known of or been aware of the excessive risk to inmate safety. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

13

Plaintiff's Amended Complaint can be read as asserting that Defendants were deliberately indifferent in denying him the minimal civilized measure of life's necessities, such as the ability to use the restroom, during the time he spent in the four-point restraints. *See Parkell v. Danberg*, 833 F.3d at 335. "A prison official is deliberately indifferent if the official 'knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 335 (quoting *Chavariagga v. New Jersey Dep't of Corrs.*, 806 F.3d 210, 229 (3d Cir. 2015)).

Here, there is no evidence of record that Defendants were deliberately indifferent. Indeed, there is no evidence that either Defendant was present during Plaintiff's hospitalization. Also, while Plaintiff states that the nurses repeatedly told officers that at least the right arm should not be cuffed due to his injuries, there is no evidence that this information was provided to Defendants. Plaintiff's main complaint, however, revolves around the use of the bathroom. Yet there is no evidence of record that Plaintiff was not allowed to void his bladder or evacuate his bowels. SOP 100.08 concerns the security or control of an offender while at a hospital. Plaintiff complains that during his hospitalization, he was never permitted access to the bathroom and, when he needed to evacuate his bladder or bowels, he was required to do it in full view of the officers. But even had Plaintiff been given access to a bathroom (presumably he was given a portable urinal and/or bedpan), SOP 100.08 provides that when an offender is escorted to the bathroom he shall be in cuffs and leg restraints, is not allowed to secure or close the door, and must remain in the officer's view at all time without any exceptions. (D.I. 70 at 23)

Prison officials have a legitimate and important security interest in restraining offenders while they receive off-site medical care in unsecured hospitals. Here, the evidence does not support a finding that Defendants were deliberately indifferent to a substantial risk of serious harm faced by Plaintiff or that they disregarded that risk by failing to take reasonable measures to abate it. Instead,

14

the record indicates that steps were taken both to provide Plaintiff humane conditions of confinement while also maintaining security and safety during his hospital stay. Because Defendants did not violate Plaintiff's constitutional rights under a conditions of confinement theory, they have qualified immunity and are shielded from liability.

**Excessive Force.** The Eighth Amendment bars prison officials from using excessive force against inmates. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (alteration in original, quotation marks omitted). Claims of use of excessive force require consideration of "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley*, 475 U.S. at 321 (citation and internal quotation marks omitted). Whether this standard has been met "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21 (quotation marks omitted); *see also Wilkins v. Gaddy* 559 U.S. 34, 37 (2010); *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009).

*Hope v. Pelzer*, 536 U.S. 730, 738 (2002), is the controlling case on the constitutionality of mechanical restraints. *See Young v. Martin*, 801 F.3d 172, 179 (3d Cir. 2015). In *Hope*, the Supreme Court identified the following criteria relevant to the use of excessive force test: "(1) where the inmate had 'already been subdued, handcuffed, [and] placed in leg irons,' and (2) there was a 'clear lack of an emergency situation' such that '[a]ny safety concerns had long since abated,' then (3) subjecting the inmate to 'substantial risk of physical harm' and 'unnecessary pain' serves no penological justification." *Young*, 801 F.3d 172, 180 (quoting *Hope*, 536 U.S. at 738).

Plaintiff's Amended Complaint can be read as asserting that Defendants used excessive force in restraining Plaintiff as he alleges they enacted or maintained a policy or practice that cause him to

15

be held in handcuffs and shackles in a four-point restraint during his entire hospitalization. Plaintiff alleges the policy/practice resulted in pain, humiliation, and torture, constituting cruel and unusual punishment.

In his grievance, Plaintiff, acknowledges that there are security risks in every inmate action, but contends certain situations call for changes in the policy. Plaintiff states that having his arms cuffed to the bed was painful due to the chest tube, but he does not complain that the restraints were too tight or that the use of the restraints resulted in physical injury. Nor did Plaintiff provide any information on whether treatment was required as a result of the use of restraints. He also argues, without providing evidence (for example through his Declaration), that Defendants incorrectly describe the extension of restraints for mobility. Plaintiff argues they were not.

It seems that the chest tube may have exacerbated Plaintiff's discomfort when he was placed in four-point restraints, but there is no evidence of record that the fact of this discomfort was relayed to Defendants. Also, Defendants provided evidence, through Vance's declaration, that typically an offender is restrained by cuffs connected to the sides of the hospital bed, and this permits some movement of an offender's arms. In addition, typically two sets of regular handcuffs or one regular set of handcuffs and a set of flexcuffs are used for each arm to provide the offender greater movement or flexibility. The inventory in the logbook reinforces the statements in Vance's declaration as it indicates that there were two sets of handcuffs, two sets of shackles, and four flexcuffs. (D.I. 70 at 27-34) In addition, the October 14, 2014 logbook states, "[it] should be noted that I/M Parkell has flexcuffs in addition to his handcuffs. He is currently 4 pointed." (*Id.* at 30) The use of handcuffs and flexcuffs was also noted on October 17, 2013. (*Id.* at 32)

In applying the *Hope* factors, the first factor weights in Plaintiff's favor. Plaintiff was in a hospital setting for treatment and, thus, it appears he had been subdued. The other two factors weigh in favor of Defendants. With regard to the second factor, Plaintiff was placed in restraints to

maintain a safe and secure environment during his hospitalization. This is not a case in which any safety concerns had long since abated; instead, security remained a continuing issue throughout Plaintiff's hospitalization. As to the third factor, the use of four-point restraints served a penological justification of providing security and supervising an offender in an unsecure facility. As acknowledged by the Third Circuit, "[p]rison officials have a legitimate and important security interest in restraining those in their custody while they receive off-site medical care in unsecured hospitals. *Hoyte v. Wagner*, 2009 WL 215342, at *2 (3d Cir. Jan. 30, 2009). In addition, "there is nothing wrong with the use of restraints regardless of whether the person in custody is a detainee or a convicted prisoner." *Id.*

The record contains no evidence that Defendants acted maliciously or sadistically. Rather, the record evidence is that prison officials exercised their discretion in following SOP 100.08 while Plaintiff was hospitalized. No reasonable jury could find that Defendants used excessive force in violation of the Eighth Amendment. Because there was no constitutional violation under an excessive force theory, Defendants have qualified immunity and are shielded from liability.

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' motion for summary judgment. (D.I. 72)

An appropriate Order will be entered.